Good morning, and may it please the court, Sly Vondana Peterson for appellate Marlon Evans, who's also the movement in this case. I'd like to try Judge Lee, you might want to make sure we've got, we only have one picture on there. That's the only thing that's worrying me. Is Ms. Aarons here? I know this is Ms. Peterson, but I'm wondering about Ms. Aarons. There they are, all right. That's the only thing that's worrying me. It didn't seem to me like all the participants were here. Thank you. Sorry that I interrupted you, Ms. Peterson. I just wanted to make sure counsel was present so she could hear what you said. All right, Judge Smith. As I was saying, if I may, I'd like to try and reserve five minutes for rebuttal, please. Your Honors, we're asking for narrow relief here today, a limited remand so the district court can hold an evidentiary hearing to determine whether Mr. Evans can pass through Schlup's equitable gateway and amend his federal habeas petition from 1998. The evidence that was never presented to the jury includes not only a recantation, which the district court characterizes casting doubt on the prosecution's most critical piece of evidence, but also affirmative proof of Evans' innocence that has never been rebutted. I want to first discuss Ms. Peterson. Since we're starting at that point, it seems to me you have to answer a couple of very important questions. You make a motion for an indicative ruling and a relief from judgment under Rule 60B. That cannot be appealed. Why is this just not an appeal of that unappealable order? You're asking for the same relief. You're asking me to do the same thing you asked the district court to do. Why should I do that? Your Honors, I don't believe that this is an appeal of that unappealable indicative. Let's ask for the same relief. But we're asking for de novo review. Well, it doesn't matter whether it's de novo review or not. What matters is, are you asking for the same thing? And we've got all kinds of case law that says, if all you're doing is asking for the same thing, I shouldn't hear it. Your Honors, respectfully, we're invoking Rule 2106, which authorizes this court under equity to consider what we're presenting before this court. But 2106, as I said, 2106 is limited by the fact that the only thing you're trying to do by 2106 is do the same thing you did under that 60B motion, which you can't appeal, that I shouldn't hear it. Your Honors, if that were true, Mr. Evans would be in a position where he's essentially barred from any type of federal review of a decision that could have been clearly erroneous in the lower court. Don't you still have pending the request for a second or a successive habeas, which covers most of the same stuff? Your Honors, respectfully, that second or successive petition, which has been stayed by this court, covers Mr. Evans' Brady claims. The claims that are before this court that aren't second and successive but procedurally barred are his ineffective assistance of counsel claims for failure to present the alibis that we're saying have never been before the jury and never been rebutted. And dismissed after a summary, dismissed out of hand by a summary cursory look by the lower courts where they, the lower courts have, and again, you're not bound by the lower courts review of those alibi declarations, but the lower court dismisses those alibi declarations out of hand on the basis of who the declarants are. Let me go one further. Let me go one further because I really looked hard at this to see whether I could help you. So then I'm looking at the 60B motion, whether this ought to come up under 2601. So let's go by that. What about Schlupp? In order for this to come up under Schlupp, it's got to be an extraordinary case. And in order for it to be an extraordinary case, there has to be a showing that the trial was error-free. There's never been such a showing, has there? Your Honors, respectfully, I don't believe that there has to be a showing that the trial was error-free. I think that... Oh, that's what I... Do you want me to give you the background for that? I mean, I'm not trying to whistle Dixie with this. This is a case that I looked at. And in order to make that happen, you've got to show that the trial was error-free. Go ahead and make your argument. I just think that's where I came. Your Honors, the Schlupp gateway, it's a threshold issue, first of all. It does not allow Mr. Evans to get his claims heard on the merits at this stage and either granted or denied. It does not get a shot at habeas relief. All we're asking for is a hearing so that the Schlupp inquiry can get a fair shake in the lower courts. And the Schlupp inquiry is a probabilistic inquiry about whether a reasonable jury that's properly instructed would, and the word would is important, would more likely than not have convicted Mr. Evans based on all of this new evidence beyond a reasonable doubt. And we submit that the answer is no, and there's been no rebutted evidence. The evidence that we've presented has never been rebutted. It's uncontested that it's never been presented to the jury, even though it was available at the time of trial, which speaks to the credibility and reliability and truthfulness of that evidence. If it weren't for trial counsel, that evidence would have made it to the jury, and we might not be here. If it weren't for the fact that Mr. Evans was proceeding pro se for decades in state habeas courts, that evidence might have been presented to the state habeas courts, and we might not be here. But once counsel was appointed by this court, this court granted seven stays and even more stays after that, so that counsel could investigate and present evidence of this powerful innocence before the state courts and then before the lower courts. But even long before all that, Mr. Evans, while pro se, has been maintaining his innocence. He's been filing pro se petitions, raising a Jackson claim, which is admittedly a higher standard of proof, higher burden of proof than Schlupp is. He's been presenting claims about unreliable witness identifications. He even decided not to take a plea that might have let him be out by now and went to trial on a capitally charged case because he believed he was innocent and thought that truth would come out at trial. Unfortunately, it didn't, but that's not because of anything Mr. Evans has done wrong. Let's look, if you're really to the ineffective assistance of counsel, and you're really arguing about that, what is my standard of review in this particular situation as to that issue? Your Honor, ineffective assistance of counsel is not presently before the court. I think that would be putting the cart before the horse to address that issue first, because then the respondent could always come back and say, if you did find the IAC claim meritorious, they could always come back and say, well, look, it's procedurally barred, and he needs to get through the Schlupp gateway first. I think Judge Smith is talking about the ineffective assistance claim that's argued in your brief. Yeah, it seemed to me like you had one argued in your brief. I'm not talking about the Schlupp claim. I'm talking about the ineffective assistance that's in your brief. That's right, Your Honor. And what's the standard of review? Isn't the standard of review, given what had happened on appeal here, I have to find, were there any arguments or theories that could have supported the California Supreme Court's decision? And I have to also say, is there any room for a fair-minded jurist to disagree with what the California Supreme Court decision did? Aren't those the main decisions I have to decide? In other words, it leaves me wide open. I've got to go find arguments and theories which would support this decision, and I have to say, there's not one jurist in America who would agree with what happened. Isn't that what I have to do? Your Honors, I think that the question that you're asking about fair-minded… Isn't that what I have to do? You've already done that, Your Honor. Isn't that the standard of review? We were arguing for the non-procedurally barred and effective assistance of counsel claim. It's a limited claim that's related to suggested witness identification by Leroy Martin. And I believe this Court has already agreed that reasonable jurists can defer on that matter. It's granted a certificate of appealability, and we argue that the standard of review of that claim is de novo based on the state court's treatment of that claim, which is contrary to clearly established federal law and an unreasonable application. So the case was all about the IDs. Isn't it defense lawyer 101 that you're going to challenge the IDs before the trial court if there's some basis to do that? Absolutely, Your Honor. And this Court in Tomlin holds exactly that. It was deficient performance for counsel in a case that rests entirely on misidentification. Counsel who acknowledges as much on the record to fail to then object to this unreliable witness identification. So it seems to me that the main issue on the IAC claim has to do with prejudice, okay? And one of the problems that I have with the district court's decision, I guess it was the magistrate judge's R&R, is that it seems to conflate the substantive issue of the admission of the ID with the prejudice issue on the IAC claim. And on the first one, as Judge Smith has pointed out, the standard is would any fair-minded jurist find the ID admissible? Let's say I agree that maybe some fair-minded jurist would find that. That seems to me is a different standard from prejudice on the IAC claim, which requires a determination, at least at the threshold level, of whether there's a substantial likelihood that it might affect the outcome of the case. Which seems to me to be a different question, and the district court conflated those two, and so does everybody else seem to in their briefs. So am I missing something, or are those two different questions? Your Honors, I think that the question about fair-minded jurists comes up in the context of granting a certificate of appealability. And this court has gone ahead and granted that certificate of appealability on this claim. Now, with respect to prejudice analysis under Strickland, we're arguing that this court ought to take a look at that issue de novo because of how the state courts handled it. And frankly, the state courts failed to take into account the substantial evidence in this case pointing to Mr. Evans' innocence, or at least the lack of much evidence at all pointing to his guilt. And I think that counsel's strongly in favor of finding prejudice under Strickland, which the state courts failed to do, and therefore their decision is an unreasonable application of the clearly established federal law. Isn't the only issue before us is counsel's failure to exclude Martin's identification? Your Honor, I don't think that's the only issue before this court. Well, I think that's the only issue that's under the IAC, that the counsel failed to exclude Martin's identification. Your Honor, under IAC, the IAC that's before you now is limited to failure to object to Martin's identification. Well, wasn't it reasonable for counsel to attempt to impeach Martin rather than exclude him? Your Honor, that's... After all, after all, without the exclusion, wasn't it reasonable to have Martin's ID of Evans contradict Levan's as to the description of the shooter? I mean, that seems to me to be exactly what you'd want. Your Honor, that might have been reasonable, but that's not what counsel does in this case. Counsel actually elicits on cross-examination Martin's confirmation, Martin's admission that he was a victim of confirmation bias. Martin says on the record, and I think it's RT page 425, where he says that my recollection of what happened at the shooting in 1992 is more clear today in 1995 than it was two and a half years ago back in 1992. And that's clear evidence of confirmation bias, and that's because of all the suggestive procedures that went into place before that. But then somehow trial counsel rehabilitates Martin and gets him to say, well, my recollection actually is not more clear three years later than it was back in 1992. I have one really small question that's off point, and I really don't want to take up much time on it. It's off point, admittedly. Have you guys taken this case to whatever conviction integrity review unit they currently have in L.A. County? If not, you should. You don't even have to answer it. Your Honor... I was going to ask you one question, because the thing that worries me about this IAC claim on Martin's identification, given LeVan had a different description than Martin did of Evans, and given that the jury, because they put Martin in front of him, it was different, had to reconcile him, how could I conclude that without Martin there would be a different result? Your Honor, I don't... It seems to me that if Martin were not there, LeVan described it, it was done. With Martin, it was better for your client. Your Honor, and I think that speaks to the Schlupf allegation, actually, is that without LeVan, this case might have been done. But Martin, the jury still asked for a readback of Martin's testimony. Martin was still the only guy who actually showed up at trial. LeVan wasn't there, and LeVan also had this taint based on receiving a potential benefit from the state for whatever he said, and Martin didn't have that taint. So I would argue that Martin's testimony was important, Your Honor. And if there's no further questions... The right answer to that question, Ms. Peterson, would have been without Martin. It's a single-finger case, and you have on the single finger, you've got issues about him. So that would have been the right answer. Thank you. Thank you, Judge Kenley. I'm glad Judge Kenley's helping you out. If there's no further questions, Your Honor, I'm going to take a seat. We'll give you two extra minutes for rebuttal. Thank you, Your Honor. I think you may be on mute. Thank you. Good morning, Your Honors. May it please the Court, I'm Deputy Attorney General Kim Ahrens, appearing on behalf of the state. With regard to LeVan's recantation, the petitioner has a bigger problem because he must seek relief in a second or successive petition before he can even get to Schlepp. To the extent he seeks to raise new claims or to broaden existing claims, he has to request that from this Court. Specifically... Wouldn't that... I mean, can't you use... The whole purpose of a Schlepp hearing is to use new evidence, right? Yeah. The purpose is to overcome the timeliness, the bar on timeliness. I understand, but I mean, but it's the reason you have the hearing is because you've offered new evidence. New evidence to overcome a timeliness bar. And then if you want to then raise a new claim, to include that evidence, that's a new claim. Well, I think, and I understand that. I mean, that if you wanted to make a separate claim based on the recantation, then that would be a new claim. But my sense of what's being asked here is that that's one of the items of evidence that was offered as a basis to get through the Schlepp gateway. It was offered as to the two claims that were raised in Mr. Evans' motion to amend only. Right. That's what they just said. Yes, and those two claims had nothing to do with the identification with regard to Levon's. Yeah, so the only way that he could have the District Court consider Levon's recantation would either be to, he'd have to file a second or successive petition challenging just Levon. He's already challenged Martin's identification. So he would have to raise a claim challenging Levon's identification. That would be a new claim. Or he could request this court grant the certificate of appealability on the denial of his motion to amend, on the District Court's denial of his motion to amend. And this court declined to grant that motion. Can I ask you about the ineffective assistance claim that's argued in the briefs, not the one that's argued in the 60D motion? Yes. What plausible strategic reason or other reason is there for the lawyer not to have moved to suppress Martin's identification? The whole case was about the IDs. Like I said to Ms. Peterson, isn't that Defense Lawyer 101? Yes. If you have a basis to challenge the key evidence in the case, you're going to do that. So what's the plausible strategic reason for not doing that? There were really only two witnesses, Martin and Levon. Levon's identification was very strong. He was fearful for his safety.  And Martin was confused. You're saying that there was no basis to attack Levon's identification unless by showing some inconsistency with Martin? Are you really saying that? Yes, I'm saying that. I mean, certainly he could challenge Levon directly, but in terms of having another witness. Of course he could, because there was testimony that the detectives pointed out Evans' picture to him in the first photo spread saying, look at the face on this guy. Is that the person? So there's a basis to attack it there. Then he's offered benefits. He expresses doubts about the ID. And then he's shown the same guy's photo twice. So there's plenty of basis to attack Levon's identification on its own. So back to my question, what's the plausible strategic? So you're telling me that the strategic reason for not moving to exclude Martin's ID was that that's what the lawyer needed in order to attack Levon's? Is there any other reason besides that? Well, the standard of review here, I'd like to backtrack a little bit. I'd like you to answer my question. What's the plausible strategic reason if it's not that? Well, Martin initially thought that Levon was the shooter, and he was confused. He assumed that the direction of the bullets pointed, they were coming from Levon's car. So he made the assumption that Levon was the shooter. But then he later clarified that he didn't actually see the shooting. He took cover. The preliminary hearing, Martin stands up or sits down and points the finger at the defendant, right? Yes. So we know then at the preliminary hearing that Martin's going to identify him. So is there any other plausible strategic reason for not moving to exclude his identification other than that it might show some contradiction with what Levon said? Is there anything else other than that? Well, it would show to the extent there were discrepancies in the description. That's the same thing. Yes, yes. I don't know of any other plausible reason, but the standard here is whether there's any reasonable argument to support the state court's decision. That's why I'm asking this question, plausible, reasonable, you know, tomato, tomato. And under Strickland, the deferential standard is doubly deferential. So not only does he have to meet the Strickland standard, but he also has to meet the standard articulated in Richter and in Penholster where this court must find error beyond any possibility for fair-minded disagreement. And he can't meet that standard here because even if, first of all, let me backtrack. Martin identified Petitioner on three different occasions. The first one was a photographic lineup. He was shown 36 different photographs. There were six six-packs. The only photograph that he identified was the same photograph that LeVon identified. It was the sixth lineup. It was lineup number F. He said he was 75 percent sure that this was the person that he saw at the gas station. The second lineup was a live one. He also says it looks a lot like the guy. That's a quote. Well, he filled out an identification card. No, I'm talking about the photos. Yes, the photos. It looks a lot like the guy that I saw near the cashier's window on the night the shooting happened. I did not see him with a gun, but I saw him near the black and red car near the cashier's window. I'm about 75 percent sure that the guy in photo number three on Cardiff is the guy that I saw that night. Out of 36 photos, and if this court has had a chance to review the photographs, some of them are very similar, and that Card F, there are three individuals wearing beanies. I believe Petitioner is in position number three. The individual in position number two looks very similar. So out of 36 photographs, he picked the one that happened to be the same one that was selected by LeVon. Counsel, I have a question for you, and I didn't want to interrupt you if you had more to say to his question. No, Your Honor. You remember United States v. Wade, and it is a 1967 case from the Supreme Court, and it really talks about the vagaries of eyewitness identification and how those are well known and how the annals of criminal law are rife with instances of mistaken identification. Given that the whole case here that the state has is based on eyewitness identification, how can I suggest that the failure to challenge Martin's identification doesn't meet well within the range of what he should challenge because it is not in the wide range of professional assistance not to challenge it? Well, the Wade decision also said that it would permit the judicial system to continue to rely on lineups and eyewitness identifications. And in this case, the allegation is that there was some wrongdoing after that first identification, after he identified Petitioner's photograph out of the 36. So under the totality of the circumstances, there is some indicia of reliability because nobody made any suggestion. The police didn't try to persuade him to select that one photograph. They didn't tell him that Petitioner was at the scene. He made that identification on his own. Well, the thing that worries me about this is because in my view, we're looking at this record, Lavon's description of Evans was not very accurate. And so the absence of Martin's testimony, it seems, would have a reasonable probability of having a different result in this particular situation. And given that the vagaries of ID are well known, I'm trying to figure out how this failure to challenge doesn't fall outside of the range of reasonable professional assistance. I apologize, Your Honor. Did you say Martin's identification was not accurate or his description? No, I said Lavon's description of Evans wasn't very accurate. So if you don't have Martin's, then it seems to me you do have a reasonable probability of reaching a different result. I would respectfully disagree based on the transcript. Yes, the transcript where Lavon makes the identification is very clear. When he viewed Petitioner's photograph, well, let me backtrack. He started out by expressing how afraid he was to testify, which gives him some credibility. That transcript is 80 pages. 28 pages of that transcript consist of his statements of fear about gang retaliation before he even made the identification. He said, they'll retaliate. Someone's always watching me. He told the detective, I want to help you, but I've got to go home, too. And where I'm living now, there's no defense. He stated over and over, I'm really afraid. He had seen other killings since the gas station shooting. He said that several gang members came to visit him since the gas station shooting, and he stated you couldn't pay them to come and see me before. He then said that he didn't want to go to court. So he was extremely reluctant to even make an identification. When he viewed Petitioner's card in the sixth lineup, he said, oh, that's him right there. That's him, exclamation point. This is him. This is him. That's the guy with the AK. Card F. This is the guy right here. And then he said this guy had a little mark or something by his eye, and that's him. He looked right at me and shot me. Or shot at me. So that's very persuasive. That's a spontaneous statement where he became very excited. He repeated it several times. This is the guy. And that was an unequivocal identification of Petitioner. If he later made errors in his description about what Petitioner might have been wearing, he was being shot at.  He described Petitioner's face. He noticed that there was a mark by his right eye. And, again, several of those photographs, the individuals depicted in the photos, look very similar. And he selected the same photo that was selected by Martin. In the Ness versus Wade Supreme Court case, it cited examples of overly suggestive lineups. Do those examples set a floor, or are they just examples? Because here the lineup, I think, was suggestive, but maybe not as egregious as those examples in the Wade case. So how do we construe the Wade decision when they cite those examples? Well, I believe the Wade decision was a pre-AEDPA decision. And this Court is bound by clearly established authority. And under Moose Lawton, there must be a clear rule. So there's no clear rule precluding lineups that have two photographs of the defendant. So the State Court wasn't bound to apply that rule. But even so, there were two photographs. The first one was in the first lineup, and there was no – neither of the witnesses identified Petitioner conclusively from the first photograph. They identified him from the last one in the sixth lineup, where he was wearing a beanie. There's no rule that says that detectives can't show witnesses multiple lineups, so that they can't, you know, they can't show – have multiple identifications. So what's relevant is here is a rule that the State Court was bound to apply. There's no other relevant Supreme Court opinion on – other than since Wade? There's the Foster decision that is relied on by Petitioner, but this case is not analogous to Foster. In Foster, there were three people in the first lineup, and the defendant was placed in a highly conspicuous position because he was the only one wearing a leather jacket. And the witnesses had described the suspect as wearing a leather jacket at the time of the crime. He was the only one wearing a leather jacket, and he was six inches taller than the other two suspects. When the witness couldn't identify him from that, the witness was placed one-on-one with a defendant in that case in a room, and they actually spoke, and then there was then another lineup where the witness identified the defendant. That's not this case. There were 36 photographs here. And then the live lineup included at least three that we know of lineups of individuals. So this case is not analogous to Foster. Great. Thank you. Ms. Peterson, you have an additional two minutes. Thank you, Your Honor. Just two points that I want to address that Ms. Ahrens made. First, that this case is not analogous to Foster. In Foster, it was, I believe, the witness himself who asked to speak with the suspect after to speak with Mr. Foster after seeing him in the lineup. So that's why the one-on-one confrontation took place. In contrast to that, this Mr. Evans was depicted twice in the same day out of the 36 pictures. He was the only person depicted twice, not based on any prompting from Mr. Martin, but because law enforcement chose to do it. He was one of three people in that same six-pack, in that same photo array, who was depicted wearing a beanie, and that was not his beanie. And these are the ones shown to LaVon or the ones shown to Martin? Shown to Martin, Your Honor. I'm talking about Mr. Martin's identification. And I also want to say that probably the most damaging thing in this case is that after the second confrontation, the live lineup, where Martin is still only 75% sure that Evans is the guy, police actually tell Martin the person he thought came closest was actually at the shooting. So any identification thereafter, the in-court identification that came after that point, are completely unreliable. That didn't happen in Foster. The worst that Foster had was police in effect telling the witness that the suspect was the person. Here, police actually said it outright in so many words, that the person that Martin had identified was actually there on the day. The second thing that I want to rebut is the fact that no one suggested anything to Martin. I think that our briefs make it very clear, again, that Evans was the only person shown twice. And it's very noteworthy that the first time Martin picked out no one in the six-pack. Without any suggestion, he picked out no one, not Evans. And I see that I'm out of time, that there's no further questions. Thank you, Your Honors. Thank you, both of you, for a very helpful argument. The case has been submitted.
judges: N.R. Smith, Kennelly, Lee